THE JOHN S. METCALF COMPANY

*v.*

JOHN NYSTEDT.

|203    333|
|204    ³527|
|206    152|

*Opinion filed June 16, 1903.*

1. APPEALS AND ERRORS—*when continuance is properly refused.* A motion for continuance for an absent witness is properly overruled where the affidavit fails to state that such witness is the only one by whom the particular facts may be proved or that such facts are true, and which fails to show that his attendance could be procured at a subsequent term or to give any reason why his deposition had not been already procured.

2. MASTER AND SERVANT—*master must furnish servant a reasonably safe place to work.* The master is bound to use reasonable care to provide his servants with a reasonably safe place to work, and he cannot escape liability for injury to a servant from a non-performance of such duty by having delegated it to another person who for some purposes was a fellow-servant of the injured party.

3. SAME—*when case is properly left to the jury.* An action by a servant against the master for personal injuries received from the breaking of a scaffold is properly left to the jury, where it appears that eight workmen, by the peremptory order of the foreman, were for a temporary purpose crowded upon the scaffold which was intended for but two, and that the defect in the lug which gave way was concealed, and unknown to the plaintiff.

*Metcalf Co.* v. *Nystedt*, 102 Ill. App. 71, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

WALKER & PAYNE, for appellant.

DENEEN & HAMILL, for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This is an action on the case, brought by appellee, against appellant, in the superior court of Cook county, to recover damages for a personal injury sustained by

him while in its employ. The declaration upon which
the case was tried contained nine counts, each of which
alleged, in substance, that the appellant was engaged in
erecting a grain elevator in the city of Chicago; that the
appellee was in its employ; that he was ordered by the
foreman of appellant to work upon a platform supported
in one of the bins of said elevator, sixty feet above the
ground; that it was the duty of the appellant to furnish
him a reasonably safe place upon which to stand while
at work; that it neglected so to do, and knowingly fur-
nished him an unsafe and insecure place upon which to
stand while at work; that while he was standing thereon,
in obedience to the order of said foreman, with all due
care for his own safety, a lug upon which the platform
rested broke and the platform fell and he was precipi-
tated to the bottom of the bin and injured. The general
issue was filed, and a trial was had before the court and
a jury, which resulted in a verdict and judgment in favor
of the appellee for the sum of $5000, which has been af-
firmed by the Appellate Court for the First District, and
a further appeal has been prosecuted to this court.

It is first assigned as error that the court erred in
overruling a motion for a continuance made by the ap-
pellant shortly before the case was called for trial, on
the ground of the absence of one Royea, its foreman, who
was alleged to be a material witness in its behalf. The
affidavit filed in support of the motion failed to state
that Royea was the only witness by whom the appel-
lant could prove the facts sought to be proved by him.
(*Hodges* v. *Nash*, 141 Ill. 391.) It also failed to state that
the facts sought to be proved by the absent witness were
true, and did not show that his attendance in court or
his deposition could be obtained at a subsequent term of
the court, (*Wilhelm* v. *People*, 72 Ill. 468; *Dacey* v. *People*,
116 id. 555;) and the case had been pending in court for
more than a year, and no reason was shown why the
deposition of the witness had not before that time been

taken.    The court did not err in overruling the motion for a continuance.

It is next assigned as error that the court declined to peremptorily instruct the jury to find for the appellant. The appellant introduced no evidence, but relied upon the inability of the appellee to make a case.    The facts, as disclosed by the evidence, were, that on February 5, 1900, the appellant was engaged in constructing a grain elevator in the city of Chicago.    The elevator was forty feet wide and one hundred and twenty feet long, and the appellee, who was a carpenter by trade, in company with about fifty other carpenters, was at work thereon under the direction of a foreman.    After the elevator reached the height of about thirty feet its interior consisted of bins, which ranged in size from 6x13 to 13x13 feet.    The walls and partitions which enclosed the building and cut up the interior into bins were made of planks laid flat-wise and then nailed together.    In constructing the walls and partitions the workmen stood in the bins upon plat-forms consisting of two parts, which were slightly smaller than the interior of the bins, so that they could be readily taken apart and moved up and down, and were supported by lugs made of strips of planks laid into or fastened to the inside of the walls and partitions by the work-men.    As the construction of the walls and partitions advanced, the carpenters laid in or fastened to the walls and partitions new lugs, and the platforms were raised up and supported on these new lugs, and the building of the walls and partitions progressed from this new level. These lugs were selected by the workmen from the materials used in constructing the walls and partitions, and when the platforms were moved up they were sawed off or removed.    One or two carpenters worked in the small and two or three in the large bins.    The tops of the walls and partitions were kept on a level, and the building was bound together by large timbers.    A tramway ran length-wise through the center of the building, upon which the

building materials were conveyed to the place where used. The appellee had been engaged at various times in elevator construction, but had not worked on the walls or partitions of this elevator until the day upon which he was injured. At about three o'clock in the afternoon of the day of the accident a timber one foot square and forty feet long was brought to the top of the building. It was necessary to swing it one-fourth of a circle to get it into place. This had to be done by hand. The foreman called appellee and other workmen from the bins where they were at work, to assist in moving the timber. In order that they might handle the timber they stood upon the platforms in the bins near where it rested upon the top of the walls and partitions. The weather was cold and the timber was covered with ice. When appellee was ordered to assist in handling the timber he sought to put on his gloves, but was peremptorily ordered by the foreman to take hold of the timber with his bare hands. Thereupon the appellee and seven other men got into one of the small bins and lifted upon the timber. The platform upon which they stood, by reason of the breaking of one of the lugs which supported it, gave way, and the appellee and four other workmen fell to the bottom of the bin, a distance of forty-five feet. The bin in which the plaintiff was standing when the platform fell, was not the one in which he had been working, and the lug which gave way was placed in position by a carpenter by the name of Kowald, who had been working in that bin.

If there is evidence in the record fairly tending to support the judgment, this court is powerless to review the facts, as the finding of the Appellate Court in regard to the facts, when there is evidence tending to support the judgment, is final, and cannot be reviewed by this court. (*Birdsell Manf. Co.* v. *Oglevee,* 187 Ill. 149.) The appellant was bound to use reasonable care to furnish the appellee a reasonably safe place in which to work, and

if it failed so to do and the appellee was injured without any fault or neglect on his part, the appellant's liability was established. *Pioneer Fireproof Construction Co.* v. *Howell,* 189 Ill. 123.

In the case of *Goldie* v. *Werner,* 151 Ill. 551, it was held that a servant, in order to recover for a failure of the master to provide him with safe appliances, which includes a safe place in which to work, (*Hess* v. *Rosenthal,* 160 Ill. 621,) must establish, *first,* that the appliance was defective; *second,* that the master had notice thereof, or knowledge, or ought to have had; *third,* that the servant did not know of the defect and had not equal means of knowing with the master.

As to the first proposition, it clearly appears from the evidence that the lug which gave way was a knotty, cross-grained, dozy piece of timber, and unfit for the use to which it was put. W. H. Rex testified: "The lug that broke was hemlock timber. It was cross-grained and dozy—not sound. There was some knots in it." Frank Engstrom testified: "After the scaffold fell I examined the ends of the lug that broke. In one end there was a bad knot." G. Lundberg testified: "I looked at the lugs the next day in the bin where they were broken,—that is, looked at the parts broken off next to the wall. The south lug was broken off even with the wall and the north lug six or eight inches from the wall. The lug was a two-by-four; was on flatways. There was a knot right in the lug flush with the wall, where it broke off."

As to the second proposition, it appears from the evidence that the lug which supported the platform which gave way was placed in position by a carpenter by the name of Kowald, and that the bin in which the scaffold fell was located at least two bins removed from the bin in which appellee had been at work prior to the time he was called by the foreman to assist in removing the timber. In the case of *Chicago and Alton Railroad Co.* v. *Maroney,* 170 Ill. 520, it was held that it was the duty of

203—22

the railroad company to furnish a safe scaffold for use by brick masons in its employ, engaged in erecting a round-house, and that such duty was a positive obligation, which could not be delegated by the company so as to release it from liability in case of an accident from defects therein, and that in the absence of actual knowledge to the contrary the workman had the right to assume the railroad company had discharged its duty, and that in a suit between a brick mason and the company to recover damages for injuries received by the falling of the scaffold, the plaintiff need not prove the railroad company's knowledge of the defect, where such defect was not latent, but was a defect which resulted from the neglect of other servants of the master in constructing the scaffold. On page 524 it was said: "If the scaffold had been properly constructed and had become unsafe by reason of a defect subsequently arising, the doctrine that the liability of the appellant company depended upon notice of such subsequent defect might have had application, but not so when the defect occurs by reason of the failure of the appellant company to discharge the duty cast upon it by law of providing a safe place for the appellee to work. If it omitted its duty in this regard, no rule of law required it should be notified of its own failure before it should be deemed answerable for injuries resulting from such failure." The scaffold which fell in this case was constructed by a servant of the appellant, who for that purpose stood in its place, with improper material, and the jury were justified, from the evidence, in finding that the appellant had, or should have had, notice or knowledge of its defects, and that the scaffold fell by reason not alone of the defective lug, but that it was broken down by reason of eight workmen being crowded, by the order of the foreman, upon a scaffold intended, at most, to bear but the weight of two.

As to the third proposition, there is no pretense that the appellee had any notice or knowledge of the defect-

ive condition of the scaffold upon which he stood at the time of the accident. He was at work in another bin at the time he was called to assist in moving the timber and had been upon the building but a few hours. The defect was concealed from view, being underneath the platform, and he was acting, at the time the scaffold fell, under a peremptory order of the foreman to take hold of the timber with the other workmen and lift upon the same, and the order could not be obeyed successfully except by standing upon the scaffold which fell.

We think it clear the appellee brought himself within the rule announced in the *Goldie case*, and that the court did not err in declining to take the case from the jury.

It is next complained that the court erred in declining to submit to the jury, in the form of special interrogatories, the question whether or not the appellee and Kowald were fellow-servants, and acting together as such at the time Kowald selected and used the defective lug upon which the platform was supported at the time the lug broke and the scaffold fell. The court committed no error in refusing to submit that question to the jury, as the finding of that fact either way would not have rendered the finding repugnant to or irreconcilable with the general verdict, (*Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 132,) as the question of fellow-servant is not in the case. The duty resting upon the appellant to use reasonable care to furnish the appellee a reasonably safe place in which to work could not be delegated by it to another so as to relieve it of liability, although the person selected by it to perform the service of preparing the scaffold, for some purposes was the fellow-servant of appellee. In *Hess* v. *Rosenthal, supra*, on page 628, it is said: "The duty to exercise reasonable care to see that the place furnished for a servant to work is reasonably safe is a positive obligation towards the servant, and the master is responsible for any failure to discharge that duty, whether he undertakes its performance per-

sonally or through another servant. The master cannot divest himself of such duty, and he is responsible as for his own personal negligence for a want of proper caution on the part of his agent." And in *Chicago and Alton Railroad Co.* v. *Maroney, supra,* on page 524: "It is, however, insisted, the workmen employed by the appellant company to construct the scaffolding, and the appellee, were fellow-servants, and that appellee cannot recover if he was injured by the negligence of a fellow-servant. The relation of fellow-servant, if it existed, cannot avail to relieve the appellant company of liability." And in *Chicago, Burlington and Quincy Railroad Co.* v. *Avery,* 109 Ill. 314, on page 322: "The master's own duty to the servant is always to be performed. The neglect of that duty is not a peril which the servant assumes, and where the performance of that duty is devolved upon a fellow-servant, the master's liability in respect thereof still remains. Care in the supplying of safe instrumentalities in the doing of the work undertaken is the duty of the master to the servant, hence the rule of non-liability on the part of an employer for the negligence of a fellow-servant has no application in this case, where the negligence in question is the master's neglect of duty in the providing of safe appliances."

The further complaint is made that the court misdirected the jury as to the law on behalf of the appellee, and refused to properly direct them upon behalf of the appellant. While the instructions numbered 3 and 4, given by the court on behalf of the appellee, were inartificially drawn, in view of the evidence we are confident they did not mislead the jury, and the modifications of the appellant's third and eleventh instructions we think were properly made. The instructions to the jury as to the law governing the case were substantially correct.

We find no reversible error in this record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*