BARBARA NAYLOR *et al.*, Plaintiffs-Appellees, *v.* ANDREW GRONKOWSKI *et al.*, Defendants-Appellants.

(No. 56158;

First District—December 12, 1972.

STAMOS, P. J., specially concurring.

Mullin and Devine, of Chicago, (Gerald B. Mullin, of counsel,) for appellants.

Berkson & Gorov, Edwin Gunn, and Wachowski & Wachowski, all of Chicago, (Arthur M. Gorov, Stephen J. Schlegel, and Jerome H. Torshen, of counsel,) for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This proceeding involves two dramshop actions which were consolidated for trial. Both arise out of an occurrence in which Jackie Naylor was killed and Garrett Stewart injured. Barbara Naylor, widow of Jackie, sues on her own behalf, also as the next friend of Suzanne Naylor, her minor daughter, and as adminstrator of the estate of Jackie Naylor, for loss of support caused by his death. Plaintiff Garrett Stewart sues for personal injuries suffered by him in the same occurrence.

Both actions were first brought against the owners of two taverns, Andy's Barn and The Old Rendezvous, it being alleged that liquor had been obtained at both places by the parties who inflicted the injuries. Plaintiffs dismissed their cause of action against the owner of The Old Rendezvous, leaving as defendants Andrew Gronkowski, the owner of Andy's Barn, and Walter and Sophie Jadczak, owners of the building in which Andy's Barn is located. The jury found the defendants guilty and assessed damages at $40,000 for plaintiff Naylor and $1,500 for plaintiff Stewart. The trial court entered judgment upon the verdict. Defendants state the issues on appeal as follows:

(1) Whether testimony given at a prior criminal trial is admissible as evidence in a subsequent civil action where the witness is present and available to testify;

(2) Whether a dramshop owner can be held liable under the provisions of the dramshop act without a direct sale of intoxicating liquor to the person causing the injury.

The plaintiffs contend, as to point 1, that the statements made at the prior criminal trial qualify as declarations against interest and are thus admissible despite the hearsay rule; and as to point 2, that the trial court's instructions concerning defendants' dramshop liability were proper. The facts follow.

Kenneth Cunningham and his companions, John Liguie, Phillip Spagnola, and William McAvoy, while intoxicated, entered a tavern and began beating the patrons. Cunningham struck Jackie Naylor over the head with a pool cue and killed him. Plaintiff Stewart alleged that each or some of the four men assaulted him. Both complaints allege that the intoxication of the four was caused in whole or in part by alcoholic beverages obtained from Andy's Barn. The assaults in question took place at The Old Rendezvous tavern in Chicago, on February 19, 1965.

At the trial, Phillip Spagnola, then serving a sentence in the Illinois State Penitentiary for his part in the occurrences involved in this case, was subpoenaed and appeared as a witness. He testified that on February 19, 1965, he and John Liguie went to the home of Ernest Wisniewski and had something of an intoxicating nature to drink; that he did not remember whether he or any other person left Wisniewski's home to buy liquor that day; and that he did not remember how long he remained at Wisniewski's home.

John Liguie, also a participant, was called to testify. He refused to answer any questions because he had been convicted of murder in connection with the occurrence and his appeal was pending.

Kenneth Cunningham was called as a witness and testified that he was at the home of Wisniewski on February 19, 1965; that he did not know if he was in the company of Spagnola, Liguie, and McAvoy; that he had something intoxicating to drink, but did not himself purchase any alcoholic beverages that day. He further testified that he did not remember if any other member of the group bought alcoholic beverages that day. He admitted that he was in The Old Rendezvous tavern that night and that someone died there as a result of being struck on the head by the witness.

Spagnola was then recalled as a witness and the plaintiff sought to refresh his memory of the incident of February 19, 1965, by having him read a transcript of the testimony he gave at his trial for Naylor's mur-

der. Spagnola stated that he did not want to read the transcript; that he did not recall anything of the night in question; and that he guessed the statements he made in his previous testimony were true.

William McAvoy, on parole from the Illinois State Penitentiary where he was serving sentence for his part in the occurrence, testified that he was at Wisniewski's home on February 19, 1965, having arrived there at 6:30 that evening with Spagnola, Liguie and Cunningham. He stated that he had something intoxicating to drink, and that during the evening Spagnola and Liguie went out and bought more beer and whiskey. He testified that he did not know where they went to buy it, but that they were gone for only about five minutes, and that Andy's Barn was next door to Wisniewski's home. He further testified that he went with Spagnola, Liguie and Cunningham to The Old Rendezvous on the night in question; that an argument took place between the bartender and himself; that all four men left the tavern and later returned, at which time Spagnola stood at the door with a gun while he, Cunningham and Liguie beat the patrons in the tavern. He testified that he did not hit Naylor.

The court then permitted the plaintiffs, over defendants' objections, to read into the record as declaration against interest, certain portions of the testimony which Spagnola had given at his trial for Naylor's murder. The testimony was to the effect that Spagnola had been drinking at Wisniewski's home on February 19, 1965, from 11:00 A.M. to 11:00 P.M.; that during the day he had occasion to go to Andy's Barn three or four times to buy liquor, and that at 11:00 P.M. he was drunk.

Andrew Gronkowski, the owner of Andy's Barn, testified that he was tending bar on the night in question, that he did not recognize any of the four men, and did not remember if he had served them drinks on that occasion.

The trial court instructed the jury that it need only find that either Cunningham, Liguie, Spagnola, or McAvoy had purchased liquor at Andy's Barn, and that the defendants were liable if liquor had been sold to any one of the four.

We proceed to a consideration of defendants' first and principal contention on appeal; to-wit, that the trial court erred in admitting into evidence the prior testimony given by Spagnola when he was on trial for the offense. Defendants argue that the prior testimony was hearsay and does not fall within any exception to the hearsay rule. The trial court admitted the testimony as a declaration against interest. Defendants argue that a declaration against interest is admissible only when the out-of-court declarant is unavailable for questioning at the time of trial, and that in the instant case Spagnola was not only available for questioning but was actually present in court as a witness.

■■ The exception to the hearsay rule—known as declarations against interest—renders admissible in evidence relevant declarations by one not a party or privy of a party to the action, even though there is no opportunity for the other party to the action to confront or cross-examine the declarant. (*Frazier v. Burks*, 95 Ill.App.2d 51.) As with all exceptions to the hearsay rule, declarations against interest can be admitted into evidence if they meet two tests; namely, the evidence must be necessary and it must have a circumstantial probability of trustworthiness. (5 Wigmore, Evidence (3d ed. 1940) § 1420.) As to necessity, there must be a showing that the witness who made the declaration is unavailable at the time of trial. In the instant case, it is the question of unavailability with which we must at the outset concern ourselves.

Originally, the test of unavailability was satisfied only if the declarant was deceased at the time of trial. As the exceptions to the hearsay rule grew, the concept of unavailability also expanded, and forms of unavailability other than death were recognized as sufficient to satisfy the test of necessity. Illness, insanity, absence from the jurisdiction, and supervening incompetency by virtue of interest have all been held to satisfy the unavailability requirement. (Wigmore, *supra*, § 1456.) The unavailability principle has been expanded to include a witness who, by the exercise of privilege, refused to testify. *Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284; see also Miller, Beyond the Law of Evidence, 40 S. Cal. L. Rev. 1, 22—23 (1967); Comment, Declarations Against Interest—Rules of Admissibility, 62 N.W. L. Rev. 934 (1968).

The general practice is to speak of the unavailability of the witness, but the real issue involved is the unavailability of the witness' testimony which is sought to be obtained. A witness might be physically present in court, but his testimony may nevertheless be unavailable. (McCormick, Evidence (2d ed. 1972) § 253. See also *Mason v. United States*, (10th Cir. 1969) 408 F.2d 903; *Johnson v. People*, 153 Colo. 56, 384 P.2d 454.) The exercise of privilege to avoid testifying, as in the case before us, is a classic example of a witness being available in person but not his testimony. If a witness of relevant facts lost his memory because of physical or psychological reasons, the test of unavailability is satisfied. (Wigmore, *supra*, § 1408; *United States v. Hughs* (2d Cir. 1969), 411 F.2d 461. See also McCormick, *supra*, § 253.) It follows that if the failure to recall is due merely to a lapse of time, the effect is still the same; that is, the witness is unable to give the court his former first-hand knowledge of the facts. In such cases the unavailability requirement should be considered satisfied. If the witness simply refuses to testify, despite the appropriate judicial orders and penalties which can be imposed, it should be con-

sidered that the witness is unavailable. McCormick, *supra*, § 253. See *Mason v. United States, supra*.

██ If Spagnola actually did not remember the events of February 19, 1965, leading to the death of Naylor, then his testimony as to that matter is unavailable. His total loss of memory concerning such facts as his leaving the home of Wisniewski, what he had to drink, or if he had purchased any alcohol, makes his testimony unavailable even though he was a witness in court at the time of trial. If he does remember the facts and is simply refusing to testify, his testimony is likewise unavailable. Spagnola was in jail for the murder of Naylor, and the court could not use its contempt power as leverage to force him to testify. Under the facts of the case, this testimony was therefore unavailable, and such unavailability satisfies the requirement with respect to the introduction in evidence of a declaration against interest.

A second general requirement of all hearsay exceptions is that the statement have a circumstantial probability of trustworthiness. Hearsay evidence is excluded because of the probable sources of inaccuracy and fabrication which lie beneath the bare assertions of a witness, and because the credibility of such assertions cannot be tested in the glaring light of cross-examination. The exceptions to the hearsay rule allowing testimony into evidence without the test of cross-examination exist because these statements have been made under circumstances which warrant their being considered trustworthy. Such a case is the declaration against interest exception. The basis for this exception is that a statement asserting facts directly against one's own interest is unlikely to be knowingly false or heedlessly incorrect. Wigmore, *supra*, § 1457.

██ In Illinois the admissibility of declarations against interest requires that the statement be against a pecuniary or a proprietary interest of the declarant, rather than a statement against a penal interest alone. (*People v. Lettrich*, 413 Ill. 172; *People v. Moscatello*, 114 Ill.App.2d 16.) The first and clearest example of a declaration against a pecuniary interest is one conceding a liquidated indebtedness. However, declarations against interest have not been limited to such situations, and courts have generally allowed in evidence declarations admitting tortious liability in an unliquidated amount. McCormick, *supra*, § 278. *Weber v. Chicago R. I. and Pac. Ry. Co.*, 175 Iowa 358, 151 N.W. 852; *Windorski v. Doyle*, 219 Minn. 402, 18 N.W.2d 142.

In the instant case, the testimony that Spagnola gave at his prior criminal trial may have been against his pecuniary interest in that he may have admitted committing the intentional tort of assault on the decedent and Stewart. However, we cannot ascertain from the record if the por-

tion of his prior testimony, admitted here as a declaration against interest, was in fact against Spagnola's pecuniary interest. The gist of the statements admitted was that Spagnola was drinking with some other men from about 11:00 A.M. to 11:00 P.M., on February 19, 1965; that he left a friend's apartment several times during those hours and purchased liquor from Andy's Barn; and that at 11:00 P.M. he was intoxicated and went "back" to The Old Rendezvous tavern. Standing alone, these statements are neither self-serving nor disserving to the witness. In themselves they are not against Spagnola's pecuniary interest, since he cannot be held liable to any one for merely buying liquor or being intoxicated. Nor can it be determined whether the statements can be considered as within the class of statements which have been designated as collateral to a declaration against pecuniary interest. (See Wigmore, *supra*, § 1465; McCormick, *supra*, § 279.) Such a situation occurs when the actual statement against interest is not relevant to any issue in the case, but its presence in a declaration makes admissible other statements collateral to it which would otherwise be excluded from evidence as not falling within any exception to the hearsay rule. In order to admit the collateral statement into evidence there should be some connection between it and the disserving statement. (See *Smith v. Moore* (1906), 142 N.C. 277, 55 S.E. 275 at 278; *Turner v. Turner* (1905), 123 Ga. 50 S.E. 969.) In the instant case, no disserving statement was admitted into evidence. There may have been a declaration against interest made by Spagnola at his prior criminal trial [admission of an assault] which would have allowed the relevant portion of that testimony read into evidence in the instant case to be properly received as a statement collateral to a declaration against interest. However, from the present state of the record it cannot be determined if the statements admitted into evidence were in fact collateral to a declaration against interest.

■■ The only direct evidence establishing that any of the four assailants had purchased liquor from Andy's Barn was the testimony which Spagnola gave at his prior criminal trial. Since it is impossible to determine from the record before this court whether this testimony was properly admitted in evidence as a declaration against interest or as a statement collateral to such a declaration, the case must be reversed and remanded for a new trial.

■■ We have examined defendants' contention that the trial court erred in instructing the jury that it need only find that any one of the four assailants had purchased liquor at Andy's Barn in order to attach liability to the defendants for the injuries which ensued. Defendants cite a series of cases for the proposition that dramshop liability requires that the sale of intoxicating beverages must be to the person actually causing

the injury. If Spagnola had not participated in the occurrence, but had only made the purchase of alcoholic beverages, the cases cited by defendants might be in point, but since Spagnola was a willing and active participant in the occurrence, defendants' cases are not persuasive. The instructions given to the jury were proper.

The judgment is reversed and the cause is remanded for such other and further proceedings as are not inconsistent with the views expressed herein.

Reversed and remanded.

LEIGHTON, J., concurs.

Mr. PRESIDING JUSTICE STAMOS specially concurring:

While I concur with the determination in the majority opinion, I do so for the reasons assigned below.

In Illinois four requirements must be met before the hearsay exception known as "declarations against interest" may be invoked. First, the declarant must be "unavailable." Second, the declaration must be against the pecuniary or proprietary interest of the declarant. Third, the declaration must concern facts which were personally cognizable by the declarant. Fourth, it must appear that the declarant had no probable motive to falsify the facts declared. *German Insurance Co. v. Bartlett*, 188 Ill. 165, 173, 58 N.E. 1075; *Frazier v. Burks*, 95 Ill.App.2d 51, 56, 238 N.E.2d 78; *Haskell v. Siegmund*, 28 Ill. App.2d 1, 9, 170 N.E.2d 393.

In the case at bar plaintiff failed to satisfy the second and fourth requirements. The prior testimony of Phillip Spagnola that he purchased liquor and was drunk on the night in question could not be interpreted as being pecuniarily disserving, and the record provides no basis upon which we could conclude that said testimony was collateral to any declarations which were against his pecuniary interest. In addition, Spagnola's prior testimony may have been a deliberate fabrication for purposes of establishing the defense of intoxication in his criminal trial for the offense of murder. I express no opinion as to whether such was his intent, but merely observe that there existed a probable motive to falsify the facts declared.

Because plaintiff failed to satisfy the requirements for invoking the "declaration against interest" exception to the hearsay rule, I agree that this cause should be reversed and remanded. Having reached that conclusion, I find it unnecessary and inadvisable to determine whether the requirement of "unavailability" was satisfied.