PETER BUCKLEY, an Incompetent, by Dr. Alice Buckley, his Mother and Conservator *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* MARIANNE CRONKHITE *et al.*, Defendants-Appellants and Cross-Appellees.

Second District   No. 77-459

Opinion filed August 1, 1979.

488

Thomas P. Stepanich, of Waukegan, for appellants.

Ronald S. Fishman, of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendants David Schneider and Gregory Beaudin, individually and doing business as Gus & Roman's, a partnership, appeal from a judgment entered against them following jury trial of an action brought pursuant to the Dramshop Act (Ill. Rev. Stat. 1973, ch. 43, par. 135 (amended 1976)) by plaintiffs Peter Buckley, an incompetent, by Dr. Alice Buckley, his mother and conservator of his estate, and Ellyce and Juleen Buckley, his minor children, by Donna Mandel, their mother and next friend. Peter Buckley cross-appeals from the judgment.

This action arose from a single-car mishap which occurred in the early morning of February 14, 1975. Peter Buckley was a passenger in an auto being driven by Marianne Cronkhite which veered from the road and overturned in a field in the City of Highland Park. Buckley was admitted to a hospital shortly afterward complaining of aches and pains and a few hours later he lapsed into unconsciousness. Surgery was then performed on a massive blood clot in his brain; he suffered severe brain damage as a result of the clot and at the time of trial he was in a coma and not expected to ever regain consciousness.

The dramshop action against defendants Schneider and Beaudin alleged that on the date of the occurrence they operated Gus and Roman's tavern and sold or gave alcoholic beverages to Marianne Cronkhite in such quantities as to cause her intoxication which in turn caused the

accident. Peter Buckley sought damages for his personal injuries while his minor children sought damages for loss of support. The jury returned a verdict awarding Peter Buckley $400,000 and his children $75,000 and, on defendants' motion, the trial court reduced the awards to the maximum amounts allowed by the Dramshop Act, $15,000 for injury to the person and $20,000 for loss of support.

On this appeal defendants Schneider and Beaudin contend the trial court erroneously allowed a discovery deposition of Cronkhite to be introduced into evidence at trial and that the evidence failed to prove Buckley's injuries were caused by the automobile accident. On his cross-appeal Buckley contends that in reducing the amount of the verdict the trial court erroneously failed to allow him an additional recovery of $15,000 for injury to his property as permitted under the Dramshop Act.

We first consider defendants' contention that the trial court erroneously admitted into evidence Cronkhite's discovery deposition. Trial commenced at 1:30 p.m. on Tuesday, May 24, 1977, with selection of a jury. This was completed by 3 p.m. and the court adjourned to the next day. Before trial resumed the next morning plaintiffs' counsel informed the court that one of his subpoenaed witnesses, Marianne Cronkhite, had not yet appeared. By 3 p.m. plaintiffs had presented all their witnesses except Cronkhite; counsel stated he would call her to testify the next morning and the court adjourned.

When the case was called to trial the following morning, Thursday, May 26, plaintiffs' counsel informed the court that Cronkhite had again failed to appear for trial. Plaintiffs' counsel then moved for a continuance in order to have a bench warrant issued to secure her presence or, alternately, for a mistrial. He also requested that in the event these requests were denied he be allowed to introduce in evidence a discovery deposition given by Cronkhite under the declaration against interest exception to the hearsay rule. In support of his motion counsel stated to the court that Cronkhite had been served with a subpoena on May 17 requiring her to appear for testimony on May 25. Counsel also stated that he had spoken with her by telephone on several occasions prior to trial regarding the exact time and place of trial and she assured him she would be present. He stated that when she had not appeared for trial as required on the previous day he had gone to her home after trial and, finding no one there, left a note on the door telling her to appear in court the next morning. In addition, he had telephoned her residence hourly during that evening through 3 a.m. that morning, and again at 6 a.m., without receiving any answer. Defense counsel objected to each of plaintiffs' requests.

In ruling on plaintiffs' motion the trial court noted that plaintiffs had participated in an earlier, related declaratory judgment action and their

counsel was aware of the fact that Cronkhite had not appeared in that case when subpoenaed, but did so when a bench warrant was issued. The court further noted counsel was also aware that in the earlier proceeding Cronkhite had been a reluctant witness when called to testify. The court stated that, in light of that earlier behavior on the part of Cronkhite, plaintiffs' counsel was not diligent in attempting to locate her as he had described; rather he should have immediately sought enforcement of the subpoena when she failed to appear the previous day. The court also expressed concern that granting a continuance would cause the trial to be extended into the following week whereas it had previously assured the jurors they would not have to sit past the end of the present week. The court refused for these reasons to grant a continuance or mistrial, but did allow plaintiff to introduce a portion of the discovery deposition under the declaration against interest exception to the hearsay rule.

■■ In her discovery deposition Cronkhite stated in answer to questions propounded by defendants' attorney that she had purchased and consumed several alcoholic beverages at defendants' tavern. She stated she was "high," but not "drunk," when she left the tavern shortly before the accident. She also stated in her deposition that when a police officer at the scene of the accident requested to see her driver's license she had responded to him that she was drunk; however, she stated she felt she was actually "more shaken up than drunk" at the time. Aside from the statement in her deposition, there was no other evidence of the gift or sale of intoxicating liquor to Cronkhite in defendants' dramshop, an essential element of a dramshop action (*Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192, 195-96, 373 N.E.2d 1060, 1062-63; *Starkey v. Lindsey* (1972), 8 Ill. App. 3d 871, 290 N.E.2d 649 (abstract)), and the prejudicial effect of the deposition if improperly admitted is apparent.

■ Supreme Court Rule 212(a), which provides specific limitations on the use of discovery depositions at trial, allows their use where otherwise admissible as an exception to the hearsay rule. (Ill. Rev. Stat. 1973, ch. 110A, par. 212(a)(3).) A declaration against interest by a third party is admissible as an exception to the hearsay rule where the following requirements are met: (1) the declarant is unavailable; (2) the declaration was against the declarant's pecuniary interest when made; (3) the declarant had competent knowledge of the fact declared; and (4) the declarant had no probable motive to falsify. *Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192, 196, 373 N.E.2d 1060, 1063; *Frazier v. Burks* (1968), 95 Ill. App. 2d 51, 238 N.E.2d 78.

A declarant is not unavailable in a legal sense in the absence of a showing that the party seeking to use a declaration against interest used reasonable diligence in an effort to secure and present the declarant's

testimony. (See *Burton v. Drake's Mayors Row Restaurant, Inc.* (1977), 53 Ill. App. 3d 348, 368 N.E.2d 771; *Swearinger v. Klinger* (1968), 91 Ill. App. 2d 251, 255, 234 N.E.2d 60, 63.) Defendants argue that given plaintiffs' knowledge of the difficulties encountered in securing Cronkhite's presence in the earlier declaratory judgment action, their failure to immediately seek enforcement of the subpoena when she failed to appear on May 25 demonstrates a lack of due diligence. They discount the efforts of counsel on that evening and through the next morning to secure her presence as merely "perfunctory."

■■ Plaintiffs not only served Cronkhite with a subpoena before trial, but they also sought and received her assurance she would appear at trial. When she did not appear counsel made a substantial effort to reach her and procure her attendance at trial by visiting her residence and phoning her several times. The fact that plaintiffs did not immediately seek enforcement of the subpoena does not dictate the conclusion that reasonable diligence was not shown by them and we believe their efforts were made in good faith and showed reasonable diligence to obtain Cronkhite's personal testimony at trial.

The cases relied upon by defendants for the opposite conclusion are clearly distinguishable. They involve situations in which witnesses not present at trial had not been served with subpoenas and the parties seeking their testimony had not diligently attempted to locate them prior to trial. *Burton v. Drake's Mayors Row Restaurant, Inc.* (1977), 53 Ill. App. 3d 348, 368 N.E.2d 771; *John v. Tribune Co.* (1960), 28 Ill. App. 2d 300, 318-19, 171 N.E.2d 432, 441-42 *rev'd on other grounds* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148; *Devine v. Chicago City Ry. Co.* (1913), 182 Ill. App. 366.

■■ Although the trial court stated that plaintiffs' failure to immediately seek to enforce the subpoena when Cronkhite first failed to appear demonstrated a lack of due diligence justifying denial of their motion for a continuance, the propriety of that determination is not an issue on this appeal and we need not consider it. We note, however, that where a party moving for a continuance during trial establishes that it has exercised due diligence to obtain an essential witness and has been unable to do so, the ends of justice may require that the party be given a reasonable opportunity to procure the attendance of the witness. (*Lindeen v. Illinois State Police Merit Board* (1962), 25 Ill. 2d 349, 185 N.E.2d 206; *Vollentine v. Christoff* (1974), 24 Ill. App. 3d 92, 321 N.E.2d 49; *Krupinski v. Denison* (1956), 9 Ill. App. 2d 155, 132 N.E.2d 451; see Ill. Rev. Stat. 1973, ch. 110, par. 59; Ill. Rev. Stat. 1973, ch. 110A, par. 231.) As plaintiffs did attempt with reasonable diligence to obtain Cronkhite, and her testimony was necessary to show the sale or gift of intoxicating liquor on defendants'

premises, a short continuance for service of a bench warrant should have been granted. By objecting to that request defendants contributed to the unavailability of Cronkhite and should not now be heard to claim she was not unavailable.

■■ Defendants next argue that Cronkhite's statements were not against her pecuniary interest. A declaration must be against one's pecuniary interest at the time the statement is made or it fails to qualify as an exception to the hearsay rule. (*Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192, 196; 373 N.E.2d 1060, 1063.) The clearest example of a declaration against pecuniary interest is an acknowledgment that the declarant is indebted. However, declarations against interest have not been limited to such situations and extend to acknowledgment of facts which would give rise to a liability for unliquidated damages in tort. (*Naylor v. Gronkowski* (1972), 9 Ill. App. 3d 302, 307, 292 N.E.2d 227, 231; McCormick, Evidence §277, at 672 (2d ed. 1972).) Statements collateral to a declaration against interest which are substantially connected with the same subject matter as that covered by the declaration against interest are also admissible. (5 Wigmore, Evidence §1465 (Chadbourn rev. 1974); 29 Am. Jur. 2d *Evidence* §617 (1967); McCormick, Evidence §279, at 675-76 (2d ed. 1972); see *Naylor v. Gronkowski* (1972), 9 Ill. App. 3d 302, 308, 292 N.E.2d 227, 231; *Frazier v. Burks* (1968), 95 Ill. App. 2d 51, 55, 238 N.E.2d 78, 80.) The trustworthiness of the statement against interest is thought to import credibility to the collateral statements. 5 Wigmore, Evidence §1465 (Chadbourn rev. 1974); *Frazier v. Burks* (1968), 95 Ill. App. 2d 51, 55, 238 N.E.2d 78, 80-81; 29 Am. Jur. 2d *Evidence* §617 (1967).

■■ ■ Cronkhite's deposition was given at a time when negligence and wilful and wanton misconduct actions based upon this accident were pending against her. Her acknowledgment of the facts that she was drinking liquor and "high" near the time of the accident would likely help plaintiff establish liability in such actions and was clearly against her pecuniary interest. (*Cf. Merritt* (a dramshop action, where similar statements by the alleged intoxicated person were made prior to the time of the accident).) While her statement she purchased liquor from defendants' tavern would not alone subject her to tort liability, it was so connected with the subject matter of other statements as to constitute an admissible collateral statement. In *Naylor*, heavily relied upon by defendants, the reviewing court was unable to discern from the sparse record whether the statements of the alleged intoxicated person that he was intoxicated and had purchased liquor from the defendant dramshop were against his pecuniary interest when made during his prior trial for the crime which was the basis of the dramshop action. Nor could it determine whether there were any other statements made in that trial

which might have been against pecuniary interest. That situation is not present in the instant case.

Defendants' final argument regarding admission of Cronkhite's deposition is that she had probable motives to falsify. They assert she may have fabricated the statements that she was drinking and high in order to establish a defense of intoxication to possible criminal charges arising from the accident. Such a probable motive to falsify was found to exist in *Jones v. DeWig* (1974), 25 Ill. App. 3d 423, 323 N.E.2d 475, and in a concurring opinion in *Naylor v. Gronkowski* (1972), 9 Ill. App. 3d 302, 309, 292 N.E.2d 227, 232. However, in those dramshop actions the statements of alleged intoxicated persons that they consumed liquor and were intoxicated were made under the pressure of pending criminal proceedings with a view toward establishing intoxication as a defense or as mitigation in those proceedings. (*Jones v. DeWig* (1974), 25 Ill. App. 3d 423, 426, 323 N.E.2d 475, 478.) The record does not indicate any such circumstances were present in this case and, in any event, Cronkhite's statement that although she was drinking and high, she was not drunk, indicates her desire was to minimize the level of her intoxication rather than fabricate a high level. Defendants also assert Cronkhite possessed a probable motive to falsify her statement that she purchased liquor from defendants and was high in that she may have assumed that plaintiff would then be more likely, for practical reasons, to seek relief from the dramshop rather than from her. They rely on *Felker v. Bartelme* (1970), 124 Ill. App. 2d 43, 50, 260 N.E.2d 74, 78, a dramshop action where the court noted that a statement by the alleged intoxicated person that he was intoxicated at the time of the accident had a "potential self-serving aspect" of tendering the dramshop as another defendant. *Felker* does not hold that the potential self-serving aspect which it discussed constitutes a probable motive to falsify which would render a declaration against interest inadmissible, and we are not persuaded to do so on the facts before us.

■■ Defendants' other contention is that the evidence was insufficient to prove that Buckley's injuries were caused by the automobile accident. A medical expert testified he had examined Buckley and gave his opinion that his condition was caused by a trauma, which he stated meant the striking of the head against another object. Defendants argue, however, that no direct evidence was introduced to establish that Buckley suffered any such trauma in the accident. We believe there was sufficient evidence of this fact to support the jury's determination as to causation. The evidence disclosed that the vehicle in which Buckley was riding overturned, that as he walked from the scene of the accident Buckley was being aided by Cronkhite and that he complained of aches and pains when he arrived at the hospital. Further, in the portion of her deposition

admitted in evidence Cronkhite stated that immediately following the accident Buckley held his hand over his head, which was bleeding, and that he stated his head hurt.

On his cross-appeal Peter Buckley contends the $400,000 verdict in his favor should have been remitted only to $30,000, rather than to $15,000. He argues he was entitled to recover a total of $30,000 under the Dramshop Act, $15,000 for injury to his person and an additional $15,000 for injury to his property. He argues that his medical expenses and loss of earnings are recoverable as injury to his person and also recoverable as injury to his property. Since these damages exceeded $30,000 he argues he should have been allowed a $30,000 recovery. Plaintiff offers no direct authority for these arguments. Contra, *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 110, 392 N.E.2d 716, 725.

While plaintiffs filed a post-trial motion below objecting to the remittiturs on unspecific constitutional grounds, Buckley's present contention was not raised in that motion or otherwise in the trial court. An issue or theory not presented or considered by the trial court cannot be raised for the first time on review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417, 420; *D. Nelsen & Sons, Inc. v. General American Development Corp.* (1977), 51 Ill. App. 3d 62, 67-68, 366 N.E.2d 381, 386.) There being no reason to limit the application of this doctrine in the case at bar, defendants' motion that the cross-appeal be dismissed is granted.

For the foregoing reasons the judgment of the Circuit Court of Lake County is affirmed and the cross-appeal of Peter Buckley is dismissed.

Affirmed; cross-appeal dismissed.

GUILD, P. J., and WOODWARD, J., concur.